[Crim. No. 257. In Bank.—November 29, 1898.]

THE PEOPLE, Respondent, v. E. J. DOLE, Appellant.

CRIMINAL LAW—FORGERY—RAISING OF CHECK—DEMURRER TO INFORMATION.—An information charging a defendant with the crime of forgery in raising a certified check, and passing it with knowledge of its fictitious character upon a corporation named, with intent to defraud it, though not showing that the bank upon which the check was drawn had any legal existence, or that the person certifying it had authority to certify the same, sufficiently charges the forgery of an uncertified check, and the utterance thereof, and is not subject to demurrer for not showing that the check was certified.

ID.—FORGED INDORSEMENTS—SINGLE OFFENSE.—The information does not charge more than one offense, because charging that after raising the check, the defendant forged certain indorsements thereon with the single intent to defraud the same corporation.

ID.—CHARGE NOT WELL LAID.—A charge of forged indorsements of a check is not well laid where the words "falsely and feloniously" are omitted, and there is nothing to negative the authority of the defendant to make the indorsements.

ID.—EVIDENCE—CROSS-EXAMINATION OF DEFENDANT.—A defendant testifying in his own behalf is put upon the same plane with other witnesses, so far as relates to calling out upon cross-examination any fact which the jury may deem inconsistent with his direct testimony, and where he has testified in chief that he had won the forged check in a game of poker, he may be asked on cross-examination whether he stated how he came into possession of the check to the arresting officer, or to the officers in whose custody he was placed, or to the person who informed him of the particulars of the charge against him.

ID.—SILENCE OF DEFENDANT—QUESTION FOR JURY.—The silence of the defendant under accusation of crime cannot be proved against

him, as a general rule, as a circumstance tending to show guilt; but his silence in not having before stated an explanation of his possession of a forged check, testified to by him in chief, may be proved on cross-examination, and it is for the jury to determine whether such silence was inconsistent with his testimony.

ID.—MEANS OF REMOVING WRITING—EXPERT EVIDENCE.—Where it was part of the case of the prosecution to prove that writing on the check had been removed and other writing substituted in its place, expert testimony is admissible to show that there is a fluid by means of which writing may be removed from paper, without need of first showing that a solvent fluid had been used, and that the defendant was conversant with its use.

ID.—AIDING AND ABETTING OFFENSE—ERRONEOUS INSTRUCTION—ERROR CURED.—An instruction to the effect that, if the jury " believe from the evidence, beyond a reasonable doubt, that the defendant committed the offense charged, or aided, abetted, or assisted any other person or persons to commit the same," they "should find the defendant guilty," is erroneous, as implying that a person who did not commit the offense may be found guilty for mere aiding of the offense without guilty knowledge, and without "aiding and abetting the offense," but such error is cured by an instruction from which the jury could not fail to understand that aiding or assisting in the crime without guilty knowledge is not criminal.

ID.—WITNESSES NOT PRODUCED—PRESUMPTION—ERRONEOUS INSTRUCTION. An instruction based upon the mere non-production of witnesses by the defendant to corroborate his testimony that the forged check was won at gaming, that "where weaker evidence is produced when in the power of the party to produce higher, it is presumed that the higher evidence would be adverse if produced," is erroneous in substituting the word "weaker" for the word "inferior" used in section 1963, subdivision 6 of the Code of Civil Procedure; and also as being inapplicable to the facts, and implying that other witnesses engaged in the gaming would be higher and stronger evidence than that of the defendant.

ID.—CIRCUMSTANTIAL EVIDENCE—INSTRUCTIONS.—Though an instruction as to circumstantial evidence quoted from *People v. Cronin*, 34 Cal. 202, is not ground of reversal, it is not a correct and logical statement of the law. In cases of circumstantial evidence, facts should be proved which are not only consistent with the guilt of the defendant, but inconsistent with any other reasonable hypothesis of innocence, and every single fact from which the deduction of guilt is to be drawn must be proved by evidence which satisfies the minds and consciences of the jury to the same extent that they are required to be satisfied of the fact in issue in cases where the evidence is direct.

ID.—CODE DEFINITION OF FORGERY.—It is not erroneous to give section 470 of the Penal Code as a definition of forgery, though parts of it were superfluous in the case.

ID.—INSTRUCTIONS PROPERLY REFUSED.—Instructions requested are properly refused when substantially given in other parts of the charge; or when asked as to the weight and effect of evidence; or when implying that a juror has more right to vote not guilty than guilty against his conscientious convictions.

ID.—DUTY OF JUROR—REASONABLE DOUBT—INSTRUCTION.—An instruction requested that "if, after consideration of the whole case, any juror should entertain a reasonable doubt of the guilt of the defendant, it is the duty of such juror not to vote for a verdict of not guilty, nor to be influenced in so voting, for the single reason that a majority of the jury should be in favor of a verdict of guilty," is a correct statement of the duty of a juror, and should have been given.

ID.—DOUBT AS TO RAISING OF CHECK—INSTRUCTION.—Where it appears that there is no theory on which the defendant could have been convicted, if the check was not raised as charged, a requested instruction to the effect that if the jury entertained a reasonable doubt as to whether or not the check in question had been raised, it would be their duty to acquit, is correct and should have been given.

ID.—CROSS-EXAMINATION OF DEFENDANT—MATTER FOR PROSECUTION IN CHIEF.—Where the defendant had not testified in his direct examination as to obtaining the money on the forged check, it is error to permit him to be asked concerning it on cross-examination, thereby seeking to elicit matter which was part of the people's case in chief.

ID.—EVIDENCE—STATE OF ACCOUNTS OF BANK—PAROL PROOF.—The teller of the bank at which the check was passed may testify orally that he had examined the books of the bank to ascertain whether the defendant had any account with the bank when the check was passed, and that he had no account at that time.

ID.—PROOF OF CORPORATION—DE FACTO EXISTENCE—REPUTATION.—It is erroneous to permit parol proof as to the corporate character of a bank; though it is competent and sufficient to prove by parol evidence of reputation, and not by direct statement, that the bank was a *de facto* corporation.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. B. N. Smith, Judge.

The facts are stated in the opinion of the court.

H. T. Gage, Walter Bordwell, and W. J. Foley, for Appellant.

W. F. Fitzgerald, Attorney General, and Henry E. Carter, Deputy Attorney General, for Respondent.

BEATTY, C. J.—The defendant appeals from a judgment convicting him of forgery, and from an order denying a new trial.

The specific charge in the information is that the defendant, having in his possession a certified check for two dollars and fifty cents, raised it to eight hundred and fifty dollars, forged certain indorsements on it, and, knowing its fictitious character, passed it on the State Loan and Trust Company, a corporation, all with intent to defraud said corporation.

A demurrer to this information was overruled, and this ruling is the first error assigned in support of the appeal.

The most serious objection to the information is, that it does not show that the Exchange Bank, upon which the check was drawn, had any existence, corporate or otherwise, or that the person whose name was signed to the certification had any authority to certify. It may be conceded that this criticism is just, but it does not follow that the information is therefore bad. An uncertified check is as much the subject of forgery as a certified check, and if it does not appear from this information that the check was certified it remains true that the defendant is well charged with the forgery and utterance of a check uncertified. Another objection to the indictment is that it charges more than one offense. This objection is based upon an allegation that defendant, after raising the check, forged several indorsements on the back of it. This part of the charge is not well laid in the information because the words "falsely and feloniously" are omitted, and there is, therefore, nothing to negative the authority of defendant to make the indorsements. But even if the charge had been sufficient in itself, it would not have specified a distinct offense. The intent to defraud is the essential element of the crime of forgery, and the whole series of acts charged against defendant is alleged to have been done with the single intent to defraud the State Loan and Trust Company. But one offense, therefore, was charged, and the court did not err in overruling the demurrer.

It is next contended that the court erred in overruling defendant's objections to certain questions asked him on cross-examination. He had testified in his own behalf that he had won the check in a game of poker from one Adams in the rooms

of one King, at Los Angeles. He was soon after arrested in San Francisco by an officer from Los Angeles, and it appeared from his own statements that at the time of his arrest, or shortly thereafter, he was informed that the charge against him was the forgery of this check—i. e., the raising of a check for two dollars and fifty cents to eight hundred and fifty dollars. He was then asked whether he stated the manner in which he became possessed of the check to the arresting officer, or to the officers in whose custody he was subsequently placed, or to the person who informed him of the particulars of the charge against him. Being compelled against his objection to answer these questions, he admitted that he had not stated to any of the persons mentioned anything in regard to the manner in which the check came into his possession.

It is contended that evidence of the silence of defendant while under arrest and in the presence of his keepers would not have been competent evidence against him if offered by the state as part of its case in chief, and that a fortiori the fact could not be drawn out of him on cross-examination.

Whether silence under accusation of crime amounts to an admission of guilt, or whether the failure of a person accused to dispute an incriminating statement made in his presence amounts to a tacit admission of the truth of such statement, depends upon circumstances, and undoubtedly there is very high authority for holding that the silence of the accused cannot be given in evidence against him without first showing that the circumstances of the accusation or incriminating statements were such that he would feel at full liberty to reply, and would be called upon to reply. Accordingly, it has been held that the silence of a prisoner in the presence of the arresting officers or jailers was incompetent as evidence of guilt. (*Commonwealth v. McDermott*, 123 Mass. 440; 25 Am. Rep. 120, and cases there cited.) But upon this point the authorities are not uniform, and the decisions of this court do not furnish us a precedent. None of the cases cited by appellant is clearly in point, and the one upon which he principally relies (*People v. Elster*, 3 West Coast Rep. 35) is rather against him. In that case, the court was discussing instructions to the jury, not rulings upon the admission of evidence, and the error pointed out

was not in the admission of the evidence—as to which no question seems to have been made—but in the inference of guilt which the trial court assumed was to be drawn from the silence of defendant.   What this court said with respect to this was: "If such an inference could be drawn at all from the conduct or statements of the defendant, it was for the jury to draw it; they only could determine whether the conduct of the defendant on the occasion of his arrest was contrary to the ordinary behavior of a person charged with crime, or attributable to his mental characteristics, or evinced guilt or innocence." From this expression it would seem that the court decided, not that evidence of this character is incompetent, but merely that the weight of such evidence must be left for the jury to determine, unaffected by any intimation from the court that it tends to prove the guilt of the defendant.

It is not necessary, however, to decide in this case whether the silence of the accused, while in custody, can be given in evidence against him by the people as a part of their case in chief.   The question here is a very different one, viz., whether, when an accused person, testifying in his own behalf, has offered an explanation of circumstances tending to incriminate him, he may be asked on cross-examination whether he has not done, or omitted to do, something which it might be thought he would probably have done, or omitted to do, if his explanation was true. Such was the course pursued in this case.   Defendant testified that he won the check from Adams in the presence of King, and he was asked if he stated that fact to the arresting officer, or to the officers of the prison.   He admitted that he did not, and it was for the jury to determine whether or not his conduct was consistent with his testimony.   Counsel for appellant contend for the extreme proposition that because he did not testify on his direct examination in regard to his conduct at the time of and subsequent to his arrest, therefore he could not be cross-examined as to that matter.   But the rule of cross-examination is not so restricted.   Any fact may be called out on cross-examination which a jury might deem inconsistent with the direct testimony of a witness, and a defendant testifying in his own behalf is in this respect put upon the same plane with other witnesses.   (*People v. Gallagher*, 100 Cal. 475.)   The superior court did not err in this matter.

Nor did the court err in admitting the evidence of Logan that there is a fluid by means of which writing may be removed from paper. It was a part of the case of the prosecution to prove that certain writing on the check had been removed and other writing substituted in its place, and certainly it was proper to prove that there is a known means by which this may be accomplished. The point of this objection, however, seems to be that evidence of this character is inadmissible until a foundation for it has first been laid by showing that a solvent fluid has been used, and that the defendant is conversant with its use. We know of no such rule with respect to such evidence. Each of these facts is independent of the others, and has some tendency to prove the fact in issue. All of them being proved, the case would certainly be stronger than if only one or two of them are proved, but neither is to be excluded because the others are wanting. As to the competency of the witness, his testimony showed that he had made use of the fluid in question, and was in fact an expert, and the matter to be proved was the subject of expert evidence.

The trial court, in submitting the case to the jury, gave the following instruction: "If you believe from the evidence, beyond a reasonable doubt, that the defendant committed the offense charged in the information, or aided, abetted, or assisted any other person or persons to commit the same, then you should find the defendant guilty." This instruction is clearly erroneous. Aside from the person who directly commits a criminal offense, no other is guilty as principal unless he aids *and* abets (Pen. Code, secs. 31, 971.) A person may aid in the commission of an offense by doing innocently some act essential to its accomplishment, and this is especially true in regard to the crime of forgery, for he may pass the forged instrument without knowing that it is forged. The word "aid" does not imply guilty knowledge or felonious intent, whereas the definition of the word "abet" includes knowledge of the wrongful purpose of the perpetrator and counsel and encouragement in the crime. The error in the instruction is, therefore, clear, and it cannot be held that it is harmless error to instruct a jury that they must convict upon proof of a fact which does not necessarily imply guilt. It was certainly possible for the jury to have found

consistently with the evidence in this case that defendant did not forge or raise the check himself, but that it was forged by some other person, and that his only connection with it was to pass it to the Loan and Trust Company after winning it from the forger, and without any knowledge of its spurious character, in which case he would have been innocent of any crime. But the court, at the request of the defendant, instructed the jury as follows: "If the evidence does not establish beyond reasonable doubt that the defendant made or altered or forged or counterfeited the check in question, or any part thereof, with intent to defraud another, and if the evidence does not establish beyond a reasonable doubt that the defendant uttered or published or passed, or attempted to pass, as true and genuine the said check, knowing the same to be false or altered or forged or counterfeited, with intent to prejudice or damage or defraud any person, then the mere possession by the defendant of the said check, and his indorsing and negotiating the same, is not sufficient standing alone to convict, for proof of the mere possession and negotiating of a forged check is insufficient to convict a defendant of forgery in the absence of a guilty intent or guilty knowledge."

This specific instruction on the precise point affected by the error above noted in the charge of the court, we think, cured the error. For, construing the two instructions together, the jury could not have failed to understand that merely aiding or assisting in the commission of a crime, without guilty knowledge, is not criminal. In other words, they could not, in view of this instruction, have taken the charge as to aiding or assisting in its narrow and literal sense.

At the request of the prosecution the court instructed the jury as follows: "Where weaker evidence is produced when in the power of the party to produce higher, it is presumed that the higher evidence would be adverse if it had been produced."

The giving of this instruction was error for two reasons: In the first place, because the word "weaker" is substituted for "inferior," a word of different meaning (Code Civ. Proc., sec. 1963, subd. 6); and, in the second place, because it was wholly inapplicable to the evidence in the case. The defendant did not introduce inferior evidence—i. e., evidence of a lower class—upon any point as to which he could be supposed to have had

higher evidence in his power. The use made of the instruction seems to have been to found an argument against the defendant upon the ground that he had not hunted up and called as witnesses the men Adams and King, from one of whom he claimed to have won the check at poker. But the evidence of Adams and King would have been of no higher class than his own evidence, and, besides, they could not have exonerated the defendant without criminating themselves. All the evidence in regard to King and Adams contained in the record is to the effect that King was a frequenter of the racetrack and poolrooms of Los Angeles; that Adams was a "sure-thing" confidence man, and a companion of King; that King proposed the game in which defendant claims to have won the check; that defendant won from them about one hundred and fifty dollars less than the face of the check, and paid them the difference when it was transferred to him, after which they disappeared from Los Angeles. All this may have been a fiction, and the jury may have been justified in so considering it; but it was certainly an error, and a highly prejudicial error, in the court to instruct the jury not only that they were to presume that the evidence of King and Adams would have been adverse if they had been called as witnesses, but that it would have been higher and stronger evidence than that of the defendant.

The objection to instructions 1 and 2 (folios 480-82) are removed by an amendment to the record, and instruction 3 (folio 483) is a correct statement of law applicable to the case.

In charging the jury concerning circumstantial evidence, the trial judge used the following language: "Where the evidence is entirely circumstantial, yet it is not only consistent with the guilt of the defendant, but inconsistent with any other rational conclusion, the law makes it the duty of the jury to convict, notwithstanding such evidence may not be as satisfactory to their minds as the direct testimony of credible eye-witnesses would have been."

This language is quoted literally from the opinion of Justice Sanderson in *People v. Cronin*, 34 Cal. 202, and since the decision of that case has been repeated in hundreds of criminal trials in this state. It is, nevertheless, not a correct and logical statement of the law, and has been repeatedly criticised in later

decisions of this court, though it has never been deemed a sufficient ground of reversal.

In cases of circumstantial evidence, facts should be proved which are not only consistent with the guilt of the defendant but inconsistent with any reasonable hypothesis of innocence, and every single fact from which the deduction of guilt is to be drawn must be proved by evidence which satisfies the minds and consciences of the jury to the same extent that they are required to be satisfied of the fact in issue in cases where the evidence is direct. It is, therefore, inexact and illogical to say that a conviction may be had on less satisfactory evidence where it is circumstantial than would be required when it is direct. The vice of this instruction, however, is generally corrected, as it was in this case, by special instructions to the effect that every fact essential to sustain the hypothesis of guilt and to exclude the hypothesis of innocence must be fully proved.

The court did not err in giving section 470 of the Penal Code as a definition of forgery. It certainly was law, and although parts of it were superfluous in this case, we cannot see how the jury can have been misled by it.

Nor did the court err in refusing instructions VI, IX, and X asked by defendant (folios 501, 502, 505-07). They were substantially given in instructions XIX and XX (folios 465-67).

Instruction V was properly refused because it was a request to the judge to instruct the jury not as to a matter of law, but as to the weight and effect of evidence.

Among other instructions requested by defendant and refused by the court was the following: "If, after consideration of the whole case, any juror should entertain a reasonable doubt of the guilt of the defendant, it is the duty of such juror so entertaining such doubt not to vote for a verdict of 'guilty,' nor to be influenced in so voting, for the single reason that a majority of the jury should be in favor of a verdict of 'guilty.'" This is a correct statement of the duty of a juror, and should have been given. If any juror needed an instruction upon this point, it was harmful to refuse it; if no juror needed the instruction, it would have been harmless to give it.

Instruction VII (folios 504, 505) was properly refused. Against his conscientious convictions a juror has no more right to vote not guilty than guilty.

Instruction XIII requested by defendant and refused by the court was in the following language: "Gentlemen of the jury, if you entertain a reasonable doubt as to whether or not 'Exhibit A' has been raised from a two dollar and a half check to an eight hundred and fifty dollar check, it will be your duty to acquit."

This instruction was correct and should have been given. There is no theory upon which the defendant could have been convicted under this information, and the evidence in the record, if the check was not raised as charged. The refusal of the instruction probably did not no actual harm, for the evidence as to the raising of the check was all one way, but it was error to refuse it.

Instruction XIV (folio 510) was properly refused because it does not state a proposition of law, but deals with the effect of evidence.

The court erred in permitting the cross-examination of defendant for the purpose of showing that he got money from the loan and trust company on the forged check. This was a part of the people's case in chief. Counsel for the prosecution seem to have thought their case weak on that point, and sought to prove it more fully by the cross-examination of the defendant. This they had no right to do. He had not testified as to that matter in his direct examination, and they could not compel him to be a witness against himself.

The court did not err in admitting the check in evidence; there was no material variance between it and the paper set out in the information. Nor did the court err in overruling the objections to the questions asked the witnesses Brunjes and Daniels relating to the identification of the defendant.

A teller of the loan and trust company testified that he had examined the books of the bank to ascertain whether the defendant, when he passed the check and received an advance on it, had any account with the bank, and over the defendant's objection was allowed to state that he had no account at that time. The ruling of the court upon this point was correct. The fact called for was a general result that could have only been arrived at by the examination of numerous books and accounts which could not have been examined in court without great inconven-

ience and loss of time, and was therefore properly provable by parol under subdivision 5 of section 1855 of the Code of Civil Procedure.

The same witness was allowed to testify over the objection of the defendant that the State and Loan Trust Company was a corporation. This ruling was technically erroneous. It was competent and sufficient to prove that the bank was a de facto corporation, and to prove this by parol, but it was a fact to be proved, like character, by reputation, and not by the direct statement of the witness.

As the result of the foregoing discussion it is apparent that the judgment and order appealed from must be reversed, and therefore it is unnecessary to decide whether the trial court exceeded the bounds of legal discretion in refusing a new trial on the ground of newly discovered evidence. This point cannot arise on a new trial, and all other points presented by the record have been decided.

The judgment and order denying a new trial are reversed, and cause remanded.

Van Fleet, J., concurs.

McFARLAND, J., concurring.—I concur in reversing the judgment and the order denying a new trial upon the grounds stated in the opinion of the chief justice.

I do not concur, however, in the views expressed in that opinion respecting the alleged error of the court below in overruling defendant's objections to certain questions asked him on cross-examination. I think that the ruling of the court below in that matter was erroneous, and that such ruling is an additional ground for reversing the judgment and order appealed from.

In the first place, I do not think that the questions asked the defendant were cross-examination, under section 1323 of the Penal Code; they were not as to matters "about which he was examined in chief." I do not understand it to have been established by this court that a defendant in a criminal case, who has gone upon the stand as a witness for himself, can be cross-examined to the full extent to which the examination of ordinary witnesses may be carried. My views on that subject are expressed in my opinion in *People v. Meyer*, 75 Cal. 386. (See also

recent case of *People v. Arrighini*, 122 Cal. 121, where this subject is thoroughly discussed.) But the matter sought to be proved by the questions was in itself inadmissible. If a case can be imagined where it would be competent to prove what a prisoner under arrest didn't say to the officer who holds him in custody, and who is often his hostile prosecutor, the circumstances disclosed by the record here do not make such case. The·silence of a person arrested in the presence of the arresting officer, or a refusal to answer a question of the officer, is not a circumstance incriminating the person arrested, and constitutes no evidence against him. Of course, there are some circumstances under which a man's silence may be evidence against him—circumstances under which it would be natural for men similarly situated to speak; but it would be unwise and foolish, particularly in this state, where arresting officers are frequently prosecuting · officers, for a man arrested for a crime to say anything whatever to such officers. And it has been held frequently that the silence of a prisoner in the presence of the officer having his custody cannot be given in evidence. (Greenleaf on Evidence, par. 197, and cases there cited; *Commonwealth v. McDermott*, 123 Mass. 440; 25 Am. St. Rep. 120; *Commonwealth v. Walker*, 13 Allen, 570; *Commonwealth v. Kenney*, 12 Met. 235; 46 Am. Dec. 672.) I think that this rule is also substantially stated by this court in *People v. Elster*, 3 West Coast Rep. 35. The appellant was not called upon at all to explain in any way why he had not told a police officer what he then testified to, and it was not proper to put him in a position where some such explanation would be expected. The question here involved differs materially from a mere general question asked an ordinary witness as to whether or not he had ever stated to any person what he was testifying to until he came upon the stand. My opinion is, that the allowance of these questions over the exception of the appellant constitutes error that was prejudicial to the appellant.

Henshaw, J., and Temple, J., concurred.

GAROUTTE, J., dissenting.—I concur in the views of the chief justice as to the scope of the cross-examination of the defendants. When a defendant goes upon the witness stand, and for the first time tells a Munchausen tale as to his connec-

tion with the affair, I think it proper and legitimate cross-examination to ask him: "Did you ever tell this tale to anybody prior to this time? Did you tell it to the arresting officers?" I believe it is the universal practice to ask such questions, and until now I never heard the practice questioned. To ask and compel answers to those questions is certainly no invasion of defendant's constitutional rights. There is no power in the law to compel the defendant to take the witness stand in his own behalf, but when he does it he may be asked any question which will show his past conduct to be inconsistent with his present testimony. The rule of law is so declared in the recent case of *People v. Gallagher*, 100 Cal. 475. As a general principle, the defendant's silence may not be proven against him as a circumstance tending to show guilt. But upon cross-examination, if this silence be inconsistent with his present testimony, inquiry may be had upon it.

This case is reversed upon the error committed by the trial court in giving the following instruction to the jury: "Where weaker evidence is produced when in the power of the party to produce higher, it is presumed that the higher evidence would be adverse if it had been produced." This instruction embodies a very poor attempt to express the principle of law of presumptions declared in subdivision 6, section 1963, of the Code of Civil Procedure. This subdivision of the section, properly quoted, is as follows: "That higher evidence would be adverse from inferior being produced." It will be observed that the adjective "weaker" is not used in the subdivision, and I am not prepared to say that "weaker evidence" and "inferior evidence" cover the same ground. Again, under the evidence in this case I find no demand for the giving of the presumption of law attempted to be declared by the foregoing instruction, even if it be conceded to be a proper principle to be applied in any criminal case. Yet it is said in *People v. Bruggy*, 93 Cal. 486: "The practical administration of justice should not be defeated by a too rigid adherence to a close and technical analysis of the instructions of the court. Instructions are for the enlightenment of the jury as to the law of the case, and a jury never enters into such a character of analysis in considering them." The evidence called for no such instruction. By the record it is no-

where disclosed that the defendant offered "weaker" evidence when it was in his power to produce "higher" evidence. There is nothing in the record to indicate that the defendant had in his power any higher evidence to produce. In fact, there is nothing to show that there was any higher evidence anywhere. The instruction, when we consider its effect, is a blank. Neither in law nor in fact does it amount to anything. Defendant insists that it charged him with the responsibility of failing to produce King and Adams as witnesses at the trial. There is nothing in the record to indicate that the instruction was aimed at those persons, for, as suggested, there is nothing to indicate that defendant could have produced them at the trial, even by the exercise of the greatest effort. Again, it was as much in the power of the people to produce these two men as witnesses as it was in the power of the defendant, and the presumption would therefore work against the prosecution exactly as against the defendant. These suggestions only show that the attempted declaration of law was purely an abstract matter, and the jury, as intelligent men, could not have been misled thereby. Defendant's counsel is incorrect in saying that the prosecuting officers in their arguments to the jury invoked this principle against defendant by reason of his failure to produce Adams and King as witnesses at the trial. The record does not bear out such statement. In conclusion, upon this branch of the investigation, it may be said that defendant's counsel in their opening brief concede the instruction was not based upon any "particular facts" in the case. Such concession alone demands that a new trial should not be granted upon this ground.

While the defendant has the constitutional right to appeal, he must show upon his appeal some substantial violation of the law in the trial of his case. Some material right must be taken from him, or his conviction must stand. If judgments of conviction in hotly contested, complicated criminal trials are to be set aside for every technical violation of the law occurring during the progress of these trials, it might almost be said that no conviction would stand the test of appeal. If, in the multitude of rulings upon the admission and rejection of evidence, and upon the procedure of the trial in general, a judge does not make some mistake, it would be a wonder indeed. Only a few men possess

that amount of legal wisdom. The constitutional right of appeal granted a defendant does not contemplate that this court should find grounds for a new trial in any and every mistake the trial court may make. For the reasons here given, the contention of defendant discloses a matter too small to demand a retrial of the case. The other matters are even of less importance.

I think the judgment and order should be affirmed.

Harrison, J., concurred.