130 Cal.App.3d 1 (1982)
181 Cal. Rptr. 507
THE PEOPLE, Plaintiff and Respondent,
v.
LEROY GREEN et al., Defendants and Appellants.
Docket No. 20727.
Court of Appeals of California, First District, Division Two.
March 24, 1982.
*3 COUNSEL
Donna M. Veneruso and Quin Denvir, State Public Defender, under appointments by the Court of Appeal, and Allan H. Keown, Deputy State Public Defender, for Defendants and Appellants.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and William D. Stein, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
ROUSE, Acting P.J.
Defendants, Leroy Green and his brother, Danny Green, were each charged by a separate information with two counts *4 of sale of heroin, in violation of section 11352 of the Health and Safety Code. The first sale was alleged to have occurred on June 6, 1978, and the second on July 11, 1978. Following a joint trial, Danny was convicted of both counts charged, and Leroy was convicted of the June 6 sale and acquitted of the July 11 sale. On appeal, Leroy contends that the trial court erred in instructing the jury on aiding and abetting, and each defendant contends that the court erred in denying their joint motion for a new trial, which was based on grounds of newly discovered evidence. We find no error and, accordingly, affirm the judgments.
On June 6, 1978, Clark Edwards, an undercover agent for the federal Drug Enforcement Administration (DEA), and an informant, Reggie Berry, went to Leroy Green's residence where Berry introduced Agent Edwards to Leroy. Edwards asked Leroy about the availability of white heroin. Leroy responded that he had only about three grams of the drug in his possession but that he could obtain brown heroin, a less expensive drug, in one-ounce quantities from his source if Edwards would advance him the money. Edwards declined, suggesting instead that Leroy contact his brother Danny.
At Leroy's request, Agent Edwards and Berry left for about one hour and then rejoined Leroy. Danny arrived some 15 minutes later and was introduced to Edwards who, in Leroy's presence, discussed purchasing heroin from Danny. Upon being alerted by a neighborhood youth to police presence in the area, Edwards and Danny moved the negotiations to another site where Danny ultimately sold slightly less than one ounce of brown heroin to Agent Edwards for $1,400, which sum was paid in prerecorded funds. Leroy was not present at the new site where the transaction took place.[1]
The second heroin sale, for which only Danny was convicted, took place on July 11, 1978, and was similar in many respects to the first sale. As before, Agent Edwards (this time unaccompanied by informant Berry) met Leroy at the same address, declined to accept an alleged offer from Leroy,[2] asked for and was taken, by Leroy, to see Danny, and, outside of Leroy's presence, purchased just under one ounce of brown heroin from Danny for $1,200.

*5 The Jury Instructions

Leroy Green was convicted as a coprincipal for violating section 11352 of the Health and Safety Code on the theory that he aided and abetted his brother Danny's June 6 sale of heroin to Agent Edwards. At trial, the court instructed the jury on the law of aiding and abetting by reading two CALJIC instructions. The first, CALJIC No. 3.00 (1979 rev.), defines principals: "The persons concerned in the commission ... of a crime who are regarded by law as principals in the crime thus committed and equally guilty thereof include: [¶] ... 2. Those who, with knowledge of the unlawful purpose of the one who does directly and actively commit ... the crime, aid and abet in its commission...." That instruction was followed by CALJIC No. 3.01 (1979 rev.), which defines aiding and abetting: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime...."
(1) Leroy contends that the trial court erred in giving the quoted instructions because they effectively removed from the jury's consideration the issue of intent, a separate and necessary element of aiding and abetting. Also, he claims that the instructions created a mandatory presumption of intent which violated his due process right under the federal Constitution.
We agree that the court's instructions removed any separate consideration of intent from the factfinder. The CALJIC instructions, when read together, allowed the jury to find Leroy guilty as a principal in the crime once they found that he simultaneously (1) had knowledge of Danny's unlawful purpose and (2) aided, promoted, encouraged or instigated commission of the crime.
We disagree, however, with the assertion that removing consideration of such intent from the jury violated Leroy's due process rights as guaranteed by the federal Constitution. Such due process considerations come into play only as to the factfinder's determination of any "fact necessary to constitute the crime" with which the defendant is charged. (In re Winship (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068]; Sandstrom v. Montana (1979) 442 U.S. 510, 520 [61 L.Ed.2d 39, 49, 99 S.Ct. 2450] ("whether the crime was committed purposely or knowingly is a fact necessary to constitute the crime of deliberate homicide"); People v. Burres (1980) 101 Cal. App.3d 341, 346 *6 [161 Cal. Rptr. 593] ("intent necessary to commit an assault") (italics added).)
Under California case law, the only facts necessary to convict a person of aiding and abetting are (1) that the person aid in the commission of a crime (2) with knowledge of the perpetrator's unlawful purpose or intent.[3] Section 31 of the Penal Code defines principals in a crime as "[a]ll persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission...." (Italics added.) In an early decision, the California Supreme Court examined the requisite intent for aiding and abetting under the statute: "The word `aid' does not imply guilty knowledge or felonious intent, whereas the definition of the word `abet' includes knowledge of the wrongful purpose of the perpetrator and counsel and encouragement in the crime." (People v. Dole (1898) 122 Cal. 486, 492 [55 P. 581].) From this we conclude that, in addition to the mere act of aiding, there is an intent requirement necessary to convict, but that such intent is implicit in the act of aiding with knowledge of the perpetrator's guilty state of mind. No further proof of the aider and abettor's intent is required. The California Supreme Court has since reinforced this principle, stating that an aider and abettor need not have had the specific intent to commit a robbery: that the intent requirement is satisfied if the defendant, prior to its commission, realized that a robbery was being planned and that he was facilitating its commission. (People v. Tewksbury (1976) 15 Cal.3d 953, 960 [127 Cal. Rptr. 135, 544 P.2d 1335].) Another court stated the *7 same principle in different terms when faced with the contention, as in this case, that the court erred in failing to instruct the jury that one must have a specific intent to commit the crime which one is charged with aiding and abetting: "This contention is untenable. There is no question that one who does the act constituting the crime [charged] is entitled to an instruction on specific intent. [Citation.] But it is the knowledge of the wrongful purpose of the actor plus the encouragement provided by the aider and abettor that makes the latter equally guilty. Although the guilt of the aider and abettor is dependent upon the actor's crime, the criminal intent of the aider and abettor is presumed from his actions with knowledge of the actor's wrongful purpose. [Citations.]" (People v. Ellhamer (1962) 199 Cal. App.2d 777, 781-782 [18 Cal. Rptr. 905].)
One court has stated the principle in reverse. In People v. Standifer (1974) 38 Cal. App.3d 733 [113 Cal. Rptr. 653], Standifer, a defendant charged with murder as an aider and abettor, was allowed an instruction which told the jury that in order to convict him, they had to find that he had the same intent  intent to kill  as the perpetrator. The court noted, "The instructions gave Standifer more than he was legally entitled to. The only intent the jury was obligated to find in respect of Standifer was his intention to knowingly aid Nicholas in the commission of a felony." (Id., at p. 744.)
Finally, we call attention to a decision of this court, People v. Ott (1978) 84 Cal. App.3d 118 [148 Cal. Rptr. 479], which presents a situation strikingly similar to this case. There, defendant David Wally Ott, who had been convicted of selling drugs in violation of section 11379 of the Health and Safety Code on the theory that he aided and abetted in a drug sale, challenged the court's instructions to the jury. Ott contended that CALJIC No. 3.01 (1974 rev.)[4] was inadequate in that it failed to specify that, in order to be criminally liable as an aider and abettor, one must not only have knowledge of the perpetrator's unlawful purpose but must also share his criminal intent. We noted that, while several California cases contained language to that effect, "an examination of the authority upon which the proposition relies indicates that it is the knowledge of the actor's wrongful purpose  rather than his intent  which must be shared." (Id., at p. 129; italics added.) In words equally apposite to the case before us now we further stated: "[A]ppellant's insistence that the definition given in CALJIC No. 3.01 is fatally *8 defective because it omits the element of criminal intent, is ... ill founded for the simple reason that aiding in the commission of the crime with knowledge of the wrongful purpose of the perpetrator eo ipso establishes the criminal intent." (Id., at p. 130.) The requirement of shared intent asserted in Ott has also been expressly rejected by other courts in this state. (See People v. Vernon (1979) 89 Cal. App.3d 853, 869 [152 Cal. Rptr. 765] (shared criminal intent "is simply not the law"); People v. Ellhamer, supra, 199 Cal. App.2d 777, 782.)
Defendant Leroy Green relies heavily on People v. Yarber (1979) 90 Cal. App.3d 895 [153 Cal. Rptr. 875], for the proposition that acting with knowledge of the perpetrator's criminal purpose is not, without an intent to aid him, sufficient proof of aiding and abetting. Yarber presented the "unusual situation in which the liability of an aider and abettor depends ... on her aiding the perpetrator by encouraging a third party, who could not be liable either as a perpetrator or as an aider and abettor," to engage in an unlawful act. (People v. Yarber, supra, 90 Cal. App.3d 895, 910; italics added.)
We conclude that the rule of Yarber has no application in this case. Despite a very noble and scholarly effort to accommodate an unusual and somewhat bizarre factual situation which existed in that case, we are satisfied that, insofar as it may require independent proof of intent to aid and abet, beyond acting with knowledge of the perpetrator's criminal intent, Yarber does not accurately state the California law.[5] Since there is no separate intent element required for aiding and abetting in California,[6] there was no need to so instruct the jury or to prove separate intent beyond a reasonable doubt. In this instance, the *9 CALJIC instructions were sufficient alone, and the court committed no error in failing to give further instructions.[7]

Denial of the Motion for New Trial
(2a) Leroy and Danny each claim the trial court improperly denied their joint motion for a new trial made on the grounds of newly discovered evidence pursuant to subdivision 8, section 1181, of the Penal Code. The motion was based on the affidavit of defense counsel for Leroy, in which counsel stated that she had heard Agent Edwards testify at a proceeding in another trial and that portions of Edwards' testimony were inconsistent with that given in the Green trial.
Documents offered in support of defendants' motion showed two asserted inconsistencies. First, Edwards had testified at the Green trial that he was involved in "many, many, many investigations" whereas he later stated in an affidavit that he participated in only four drug transactions between March 1 and September 1, 1978  the time period during which he made the transactions for which Danny and Leroy were later convicted. Second, Edwards testified at the Green trial that buying heroin in less than one-ounce quantities did not fall within DEA criteria, whereas an investigative report from the other case revealed that Edwards had made two purchases far below that amount.
Subdivision 8, section 1181, of the Penal Code authorizes the granting of a new trial when the newly discovered evidence is "material to the defendant...." (Italics added.) Defendants claim that their newly discovered evidence is material in that it reveals inconsistencies in Edwards' testimony and thereby seriously damages his credibility.
Although defendants characterize it as evidence of perjury, we fail to discern even an inconsistency in Edwards' testimony regarding the number of drug transactions in which he participated. At the Green trial, Edwards was repeatedly asked on cross-examination why he could not answer questions put to him without referring to his notes. The following interchange ensued: "Q. And you've now told us that the reason is because you're confusing the Danny testimony and the Leroy testimony because it came up as two different cases and you want to now get it all *10 squared away in your mind. Is that what you just told the jury? A. I didn't say I was confused. I said  when I first  this case, when it was culminated, was two independent cases. Q. And that's why you're having trouble sometimes remembering exactly what happened and you have to look at your report? A. That's not the trouble, counselor. This is not the only investigation that I work with. I have many, many, many investigations." Edwards' later affidavit statement that he was involved in only four drug transactions between March 1 and September 1, 1978, is not inconsistent. In the affidavit he limited his statement to a specific time frame; at the Green trial he spoke in the present tense and without limitation to any particular period in the past. Just prior to making the above quoted statements he testified that he had had nine years of experience in narcotics cases. Also, some 14 months had elapsed between the incidents in question and the trial, during which Edwards may have been involved in new cases. Thus it is patently unreasonable, both on the face of the statement made at the Green trial and in the context in which it was made, to assume that Edwards was referring to the time frame of March 1 to September 1, 1978, when he spoke of his many investigations. Absent an inconsistency in Edwards' testimony, his credibility is unaffected and the so-called "newly discovered evidence" is not material.
A second express requirement of subdivision 8 of section 1181 is that the motion may be granted only upon discovery of evidence which the defendant "could not, with reasonable diligence, have discovered and produced at the trial." Here, both items of the alleged newly discovered evidence could have been brought out at trial during cross-examination. Defense counsel's duty to diligently exercise the vehicle of cross-examination to develop potentially conflicting prosecution witness testimony was recognized very early by the California Supreme Court in People v. Phelan (1899) 123 Cal. 551 [56 P. 424]. There, sustaining the trial court's denial of a motion for new trial, the court noted that the defendant's proffered newly discovered evidence "was a matter so closely related to the evidence given by [a prosecution witness] at the trial that the court may reasonably have concluded that it should ... have been called out upon cross-examination at that time." (Id., at p. 568; see People v. Cole (1979) 94 Cal. App.3d 854, 860 [155 Cal. Rptr. 892] (affiant "did testify at the trial, and defendant had the opportunity at that time to confront her.").)
The record shows that Edwards testified on cross-examination as to both points of information which he assertedly contradicted later, and defense counsel declined the opportunity to further develop either point. *11 When Edwards stated that he had "many, many, many investigations," counsel immediately moved on to another area of questioning. It would have been simple to ask Edwards how many he had and when he had them. Similarly, when Edwards gave as a reason for not buying heroin from Leroy the explanation that buying less than one ounce did not fall within DEA criteria, counsel asked only two more questions and then terminated the cross-examination without pursuing the subject further. It would have been logical to pinpoint the source of such criteria, explore them more fully and ask the agent whether he always followed them. The information which subsequently came to light on both points of Edwards' testimony was so closely related to Edwards' testimony at trial that diligent use of cross-examination could have produced the information at trial.
In this instance, even assuming, arguendo, that the newly discovered evidence is both material and was not discoverable at trial, the evidence would have to be such as to render a different result probable on retrial. (People v. McDaniel (1976) 16 Cal.3d 156, 178 [127 Cal. Rptr. 467, 545 P.2d 843]; People v. Williams (1962) 57 Cal.2d 263, 270 [18 Cal. Rptr. 729, 368 P.2d 353].) As a general rule, "evidence which merely impeaches a witness is not significant enough to make a different result probable...." (People v. Huskins (1966) 245 Cal. App.2d 859, 862 [54 Cal. Rptr. 253].) Defendants, however, point to cases in which impeachment of the main prosecution witness was considered sufficient to warrant a new trial.[8] The cases are distinguishable.
Here, the testimony of Agent Edwards was not the sole evidence of guilt. Defendant Danny Green concedes that the informant, Berry, partially corroborated Edwards' testimony; and, further, the prosecution was able to produce physical evidence of guilt  the heroin sold and the prerecorded funds found in Danny's possession. Moreover, the evidence does not point to either defendant's innocence. Further, in the case before us, the alleged newly discovered evidence does not remotely approach the damaging level of that which was involved in Huskins.
(3) We deal briefly with one final contention. Defendants claim that the trial court erroneously applied a subjective rather than an objective standard in assessing whether all the evidence would make a different result probable on retrial. This claim is based on the fact that, in making *12 its ruling, the court spoke in the first person, using the words "I think," "I find," "in my judgment" and so forth.
While it is important that the court apply an objective test "whether any second trier of fact, court or jury, would probably reach a different result" (People v. Huskins, supra, 245 Cal. App.2d 859, 862), the form of words used is not controlling as to whether the test was made subjectively or objectively. It is the frame of reference behind the words which is determinative. In the case before us, the trial judge repeatedly referred to the probable impact of the newly discovered evidence on the jury and expressed doubt as to the materiality of the evidence to the issues "directly involved in the fact finding process...." This demonstrates that the trial judge did in fact apply an objective standard.
(4) The decision to grant or deny a motion for a new trial on the ground of newly discovered evidence rests within the sound discretion of the trial court, and an appellate court will not interfere with that decision unless a clear abuse of discretion is shown. (People v. McDaniel, supra, 16 Cal.3d 156, 179; People v. Williams, supra, 57 Cal.2d 263, 270; People v. Beyea (1974) 38 Cal. App.3d 176, 202 [113 Cal. Rptr. 254].) (2b) In this case, no such showing has been made.
The judgments are affirmed.
Smith, J., concurred.
MILLER, J.
I concur in the majority's result but not its reasoning.
Yarber [90 Cal. App.3d 895 (153 Cal. Rptr. 875)] has created widespread disagreement over the continued propriety of giving an unmodified version of CALJIC No. 3.01 between appellate court districts, divisions and now within this division. (Cf. People v. Petty (1981) 127 Cal. App.3d 255, 263 [179 Cal. Rptr. 413]; People v. Brown (1981) 116 Cal. App.3d 820, 826 [172 Cal. Rptr. 221]; People v. Lopez (1981) 116 Cal. App.3d 882, 888-889, fn. 1 [172 Cal. Rptr. 374]; with People v. Fagalilo (1981) 123 Cal. App.3d 524, 533-534 [176 Cal. Rptr. 698].)
Without going into the analysis presented by Yarber with which I concur, I would merely like to point to the difficulty I have with the reasoning by the majority in this case. The majority opinion states that the only facts necessary to convict a person of aiding and abetting are (1) that the person aid in the commission of a crime (2) with knowledge *13 of the perpetrator's unlawful purpose or intent. However, in People v. Tewksbury (1976) 15 Cal.3d 953 [127 Cal. Rptr. 135, 544 P.2d 1335], our Supreme Court explicitly stated, "[c]riminal liability as a principal attaches to those who aid in the commission of a crime only if they also share in the criminal intent." (15 Cal.3d at p. 960; italics supplied.) The court held that the aider and abettor need not have actually had the specific intent to commit a robbery, but she had to have acted with the requisite guilty intent. The court then found that the "intent requirement" is satisfied if the defendant "prior to its commission, realized that a robbery was being planned and that she was facilitating its commission." (Ibid.) Tewksbury makes clear that "guilty knowledge" is not sufficient as a standard of culpability, but that an intent to facilitate the offense is required. The majority in this court concludes that "there is an intent requirement necessary to convict, but that such intent is implicit in the act of aiding with knowledge of the perpetrator's guilty state of mind. No further proof of the aider and abettor's intent is required."
What, I wonder, will the majority do with a case where A abducts a young woman with the intent to rape her, forces her into a car and starts to drive off. B, the woman's brother, rushes to his car intending to rescue his sister. C, the woman's boyfriend, jumps into the passenger seat of B's automobile, pulls out a gun and says to B, "Hurry up, I'm going to kill A." B's car pursues A's vehicle with C shooting through the window at A. Clearly, B has knowledge of C's intent to murder A and is aiding in the commission of the offense by driving C. Can he be convicted of aiding and abetting in the attempted murder when his only intent is to rescue his sister? I think not.
I note that the courts that have upheld CALJIC No. 3.01 as it now exists[1] have relied heavily on the realization that there will be few factual situations presented where the defendant aided the perpetrator with knowledge of the perpetrator's unlawful purpose but without the required criminal intent. Before the decision in Yarber, the court in People v. Ott (1978) 84 Cal. App.3d 118 [148 Cal. Rptr. 479] stated "that aiding in the commission of the crime with knowledge of the wrongful purpose of the perpetrator eo ipso establishes the criminal intent." *14 (Id., at p. 130; see also, People v. Ellhamer (1962) 199 Cal. App.2d 777, 782 [18 Cal. Rptr. 905].) No matter how accurate this proposition proves to be in the vast majority of cases, Yarber and the above hypothetical show that it is not irrefutable. Continued reliance on it can only invite challenge.
It would appear that rather than relying on a presumption which is not conclusive, the more prudent course would be to place the issue squarely before the factfinder and allow him or her to determine whether the required criminal intent has been proven. I join with the recommendation in People v. Petty, supra, 127 Cal. App.3d 255, that an instruction that spells out that the defendant must have acted with criminal intent in aiding the perpetrator should be given in all aiding and abetting cases. Criminal intent must be proved in each aiding and abetting case, and slightly modifying CALJIC No. 3.01 to reflect this fact assures that the issue of defendant's intent is considered and weighed by the factfinder. A defendant on trial for aiding and abetting, who is facing the same penalty as the perpetrator, should be entitled to no less.
In the case at bench, I think the failure to give a modified instruction was not reversible error. Appellant presented no argument that would have gained support from the proposed instruction and the prosecutor made no argument that would have been weakened by such instruction. Accordingly, I agree that the judgments should be affirmed.
A petition for a rehearing was denied April 23, 1982, and appellants' petition for a hearing by the Supreme Court was denied May 27, 1982.
NOTES
[1] Informant Berry accompanied Edwards to the new site but apparently was not an eyewitness to the actual sale, which took place in Edwards' unmarked vehicle.
[2] Leroy was acquitted on the offering to sell charge, which was predicated on this incident.
[3] People v. Tewksbury (1976) 15 Cal.3d 953, 960 [127 Cal. Rptr. 135, 544 P.2d 1335]; People v. Terry (1970) 2 Cal.3d 362, 401 [85 Cal. Rptr. 409, 466 P.2d 961]; People v. Dole (1898) 122 Cal. 486, 492 [55 P. 581]; People v. Vernon (1979) 89 Cal. App.3d 853, 869 [152 Cal. Rptr. 765]; People v. Ott (1978) 84 Cal. App.3d 118, 129-130 [148 Cal. Rptr. 479]; People v. Germany (1974) 42 Cal. App.3d 414, 420 [116 Cal. Rptr. 841]; People v. Standifer (1974) 38 Cal. App.3d 733, 743-744 [113 Cal. Rptr. 653]; People v. Scofield (1971) 17 Cal. App.3d 1018, 1026-1027 [95 Cal. Rptr. 405]; People v. Herrera (1970) 6 Cal. App.3d 846, 853 [86 Cal. Rptr. 165]; People v. Tambini (1969) 275 Cal. App.2d 757, 765 [80 Cal. Rptr. 179]; People v. Butts (1965) 236 Cal. App.2d 817, 836 [46 Cal. Rptr. 362]; People v. Demes (1963) 220 Cal. App.2d 423, 432 [33 Cal. Rptr. 896]; People v. Masters (1963) 219 Cal. App.2d 672, 679 [33 Cal. Rptr. 383]; People v. Smith (1962) 204 Cal. App.2d 797, 800 [23 Cal. Rptr. 5]; People v. Ellhamer (1962) 199 Cal. App.2d 777, 781-782 [18 Cal. Rptr. 905]; People v. Williams (1960) 179 Cal. App.2d 487, 490 [3 Cal. Rptr. 782]; People v. Wooten (1958) 162 Cal. App.2d 804, 810 [328 P.2d 1040]; People v. Villa (1957) 156 Cal. App.2d 128, 134 [318 P.2d 828]; People v. Etie (1953) 119 Cal. App.2d 23, 28 [258 P.2d 1069]; People v. Beltran (1949) 94 Cal. App.2d 197, 205-206 [210 P.2d 238]; People v. Wood (1922) 56 Cal. App. 431, 433 [205 P. 698]; People v. Bond (1910) 13 Cal. App. 175, 185 [109 P. 150].
[4] The 1974 revision of CALJIC No. 3.01 is virtually identical with the 1979 version challenged here.
[5] Recent cases appear to share our view, i.e., they conclude that the aiding and abetting rule laid down in Yarber must be confined to the unique facts of that case. (People v. Lopez (1981) 116 Cal. App.3d 882 [172 Cal. Rptr. 374]; People v. Fagalilo (1981) 123 Cal. App.3d 524 [176 Cal. Rptr. 698].)
[6] We recognize that there is widespread disagreement over the requisite intent for aiding and abetting as well as for accomplice liability in general, and that some state jurisdictions require that separate intent to aid and abet be proved. (See LaFave & Scott, Criminal Law (1972) pp. 505-508.) There appears to be similar disagreement in the federal courts (cf. United States v. Peoni (2d Cir.1938) 100 F.2d 401, 402 (L. Hand, J.) with Backun v. United States (4th Cir.1940) 112 F.2d 635, 637; United States v. Eberhardt (4th Cir.1969) 417 F.2d 1009, 1013); and even in our own court, e.g., People v. Yarber, supra, 90 Cal. App.3d 895; People v. Petty (1981) 127 Cal. App.3d 255 [179 Cal. Rptr. 413]; and concurring opinion by Miller, J. in this case. While we are not in total disagreement with the reasoning of Yarber, Petty, and Miller, J.'s concurring opinion, yet we believe that it is not within the province of this court to change existing law. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450 [20 Cal. Rptr. 321, 369 P.2d 937].) Therefore, until the Legislature or the California Supreme Court directs otherwise, we believe that certainty in the law will best be served by adhering to the established California rule discussed above.
[7] We hasten to add that we concur wholeheartedly in Justice Gardner's observation that "it is doubtful that many jurors will or have spent many hours in deep meditation over the difference between knowledge and intent." (People v. Lopez, supra, 116 Cal. App.3d 882, 888, fn. 1; italics added.)
[8] People v. Williams, supra, 57 Cal.2d 263; People v. Huskins, supra, 245 Cal. App.2d 859.
[1] Prior to the 1974 revision, CALJIC No. 3.01 required a criminal intent: "A person aids and abets the commission of a crime if he knowingly and with criminal intent aids, promotes, encourages or instigates by act or advice, or by act and advice, the commission of such crime." (CALJIC No. 3.01 (3d ed. 1970) p. 71, italics added.)