Filed 3/7/14  P. v. Jetton CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ORLYN JETTON,<br><br>    Defendant and Appellant. | F065146<br><br>(Super. Ct. No. F11901917)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  James Petrucelli, Judge.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Kathleen A. McKenna, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

Defendant Orlyn Jetton appeals from a judgment upon multiple convictions relating to the unlawful possession of narcotics and a stolen firearm. He asserts a claim for ineffective assistance of counsel based on his trial attorney's failure to object to allegedly irrelevant and inflammatory background information regarding the firearm theft. Defendant further contends that the trial court abused its discretion by denying a second continuance of his sentencing hearing and erred when it imposed a $296 probation report fee pursuant to Penal Code section 1203.1b. We conclude defendant forfeited the latter claim by failing to raise it below and find no grounds for reversal on the remaining issues. The judgment is therefore affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant was arrested outside a relative's home in southwest Fresno after police found illegal drugs and a handgun inside the carport of the residence. Further investigation revealed the gun had been stolen several months earlier. The Fresno County District Attorney filed a criminal information charging defendant with possession of a firearm by a felon (former Pen. Code,[1] § 12021, subd. (a)(1); count 1), possession of cocaine base for sale (Health & Saf. Code, § 11351.5; count 2), possession of cocaine base while armed with a firearm (*id*., § 11370.1, subd. (a); count 3), unlawfully carrying a loaded firearm (former § 12031, subd. (a)(1); count 4), unlawfully carrying a concealed firearm (former § 12025, subd. (a)(2); count 5), receiving stolen property (§ 496, subd. (a); count 6), and possession of 28.5 grams or less of marijuana, an infraction (Health & Saf. Code, § 11357, subd. (b); count 7).

The information included enhancement allegations that defendant was personally armed with a firearm during the commission of an offense (§ 12022, subd. (c)), was not the registered owner of the firearm (former §§ 12025, subd. (b)(6)(B) & 12031, subd. (a)(2)(F)), and knew or reasonably should have known the firearm was stolen

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2.

(former §§ 12025, subd. (b)(2) & 12031, subd. (a)(2)(B)).  It was further alleged that defendant had previously been convicted of a felony and served a prior prison term within the meaning of section 667.5, subdivision (b).

The charges were tried before a jury in April 2012.  A bifurcated bench trial followed to determine the prior prison term allegation.

Prosecution Evidence

Defendant drew the attention of Fresno police officers Fredrick Williams and Kenneth Webb as they were patrolling the vicinity of Martin Luther King Boulevard and Eugenia Avenue, a neighborhood known for illicit drug activity.  The officers observed defendant standing on the sidewalk with two other men and watched him retreat towards a residence as soon as he saw their marked police vehicle.  Officer Williams testified to seeing defendant holding his midsection with one hand, as if he had something in his waistline, and walking towards the house carrying a black plastic bag.  Defendant disappeared into a carport area and reemerged empty-handed approximately 30 seconds later as the officers pulled up to the home.

Officer Williams exited the patrol car and asked defendant if he had discarded any illegal items in the carport.  Defendant replied, "I don't know, maybe."  Soon thereafter defendant's sister, Xena Jetton,[2] came out of the house and spoke with the police.  Ms. Jetton confirmed that she had control over the premises and consented to Officer Williams' request to search the carport.

Officer Williams conducted a search and found a black plastic bag located inside a shopping cart.  He believed this was the same bag he had seen defendant carrying moments earlier, as it was the only item of its kind in the carport.  The bag contained an

---

**2**    Ms. Jetton's first name is alternately spelled "Xena" and "Zena" in different parts of the record.  We will follow the spelling reflected in the reporter's transcript.

"off-white rock substance" and a jar filled with a "green leafy substance." Underneath the bag was a loaded .45 caliber semiautomatic handgun and next to it was a digital scale.

Laboratory analysis and expert witness testimony established that the black plastic bag contained approximately 27.58 grams of cocaine base and 25.3 grams of marijuana. This evidence was uncontroverted. Defendant did not admit ownership or possession of the items seized in the search, but stipulated to the fact that he had a prior felony conviction and was not the registered owner of the handgun.

To prove the gun was stolen, the prosecution elicited testimony from Deputy Nick Vang of the Fresno County Sheriff's Department and his brother, Kou Vang. Deputy Vang explained that the .45 caliber Smith & Wesson pistol was a retired service weapon which he had purchased from the sheriff's department. He subsequently loaned the firearm to his brother to use for self-defense after his brother's home was burglarized.

Kou Vang testified that the gun was taken from his residence during a second burglary which occurred in October 2010. The burglar(s) ransacked the home and stole his brother's handgun, but left the case for the weapon behind. The case contained the serial number of the gun, which Mr. Vang provided to the investigating authorities. Police later matched the serial number to the firearm seized at the time of defendant's arrest in March 2011.

A section 969b packet was submitted in conjunction with expert testimony from a fingerprint analyst to establish the prior prison term allegation.

Defense Evidence

The defense strategy consisted of efforts to highlight the circumstantial nature of the prosecution's case and to challenge the veracity of Officer Williams' testimony. Particular emphasis was placed upon the lack of "verifiable physical evidence" to prove defendant's ownership/possession of the contraband. Cross-examination of prosecution witnesses established that there were no incriminating photographs or video footage, no "pay/owe sheets" or correspondence indicative of drug dealing on defendant's cell phone,

4.

and no forensic evidence (e.g., fingerprints, hair, DNA) on the items seized by police. Insinuations were made by defense counsel regarding the possibility that a third party had hidden the items in the carport without defendant's knowledge or involvement.

Darnell Pearson testified as an eyewitness. Mr. Pearson was one of the three individuals who had been standing in front of Xena Jetton's residence prior to defendant's arrest. He was drinking cognac and conversing with his companions when the police cruiser entered the neighborhood. Defendant was reportedly eating sunflower seeds and sending text messages on his cell phone at the time.

Mr. Pearson placed his liquor bottle on the ground and moved away from it as the police turned onto Eugenia Avenue. Defendant, meanwhile, headed towards the carport and continued text messaging as he walked. Contrary to the testimony of Officer Williams, Mr. Pearson claimed he never saw defendant holding or carrying a black plastic bag.

Verdict and Sentencing

The jury returned its verdict on April 16, 2012. Defendant was acquitted of unlawfully carrying a concealed firearm as alleged in count 5 and convicted on all remaining charges. Count 7 was dismissed in the interest of justice at the request of the prosecution. True findings were returned by the jury on the enhancement allegations and the trial court found the prior prison term allegation to be true as well.

A defense motion to continue the sentencing hearing from its original date of May 22, 2012 to June 19, 2012, was granted. An oral motion for a second continuance made at the outset of the June 19, 2012, hearing was denied. The trial court sentenced defendant to a total of 11 years in prison, comprised of the upper term of five years on count 2 for possession of cocaine base for sale, plus five years for the firearm enhancement under former section 12022, subdivision (c), and one additional year under section 667.5, subdivision (b) for the prior prison term. Various fines and fees were imposed. Sentencing on counts 1, 3, 4, and 6 was stayed pursuant to section 654.

5.

## DISCUSSION

### Ineffective Assistance of Counsel

Defendant contends his trial counsel rendered ineffective assistance by failing to object on Evidence Code section 352 grounds to certain background information about the stolen firearm disclosed by the testimony of Nick and Kou Vang. More specifically, defendant alleges that "the details of the prior ownership of the weapon, Nick's occupation, the repeated nature of the break-ins, the facts of burglary itself, and family member reactions to the burglaries were irrelevant to the charges and served only to prejudice appellant." We are not persuaded.

To prevail on a claim for ineffective assistance of counsel, an appellant must establish two things: (1) the performance of his or her attorney fell below an objective standard of reasonableness, and (2) prejudice occurred as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*); *People v. Anderson* (2001) 25 Cal.4th 543, 569 (*Anderson*).) "Even where deficient performance appears, the conviction must be upheld unless the defendant demonstrates prejudice, i.e., that, ""'but for counsel's unprofessional errors, the result of the proceeding would have been different.""'" (*Anderson*, *supra*, 25 Cal.4th at p. 569.) A reasonable probability of prejudice must be shown, meaning a probability sufficient to undermine confidence in the outcome. (*Ibid*.)

The mere failure to object to evidence is rarely sufficient to establish incompetence or constitutionally deficient performance by trial counsel. (*People v. Frierson* (1991) 53 Cal.3d 730, 747.) In any event, defendant's arguments on the issue of prejudice are undeveloped, conclusory, and fall well short of showing adequate grounds for reversal. We thus proceed directly to the second prong of the *Strickland* analysis. (*Strickland*, *supra*, 466 U.S. at p. 697 ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."]; accord, *People v. Boyette* (2002) 29 Cal.4th 381, 430-431.)

6.

Referencing the concept of "'guilt by association,'" defendant argues the jury likely inferred he was involved in the burglary of Kou Vang's home and therefore became less inclined to believe he was innocent of the current charges against him. Such reasoning seems rather fallacious given that an inference of defendant's involvement in the burglary necessarily presupposes that the jury already believed he was in possession of the stolen handgun and/or had knowledge of its presence in the carport. The same is true of the argument that the jury was improperly led to believe defendant had a propensity to commit crimes, which is further weakened by the fact that he stipulated to a prior felony conviction before the Vang brothers even took the stand.

If the jury harbored any doubts about defendant's guilt on the charges for which he was convicted, such doubts necessarily hinged upon credibility determinations as between Officer Williams and defense witness Darnell Pearson. Defendant faced an uphill battle on this front for reasons completely unrelated to the testimony of Nick and Kou Vang. First, Mr. Pearson was likely viewed as a biased witness given his lifelong friendship with defendant, which he acknowledged on the stand. Second, his credibility was inevitably tarnished by the admission that he himself had previously been convicted of felony possession of cocaine base for sale and served time in prison as a result.

Notwithstanding defendant's bare assertions to the contrary, one cannot reasonably conclude that the background information about the stolen handgun had the effect of bolstering the credibility of Officer Williams or diminishing the credibility of Mr. Pearson. Furthermore, even if the jury had accepted Mr. Pearson's version of the events, defendant was still at a loss to provide a logical and compelling explanation for why he relocated himself to the immediate vicinity of the contraband when police entered the neighborhood. Given the strong weight of the evidence and all relevant circumstances, it is not reasonably probable that a result more favorable to defendant would have occurred but for the allegedly deficient performance of his trial attorney.

7.

**Denial of the Motion to Continue Sentencing**

Background

There was a five-week interval between the guilt phase of trial and the original sentencing date of May 22, 2012. On May 18, 2012, defense counsel filed a motion to continue the sentencing hearing in order to allow for an investigation into grounds for a new trial motion. A continuance was granted and the sentencing hearing was rescheduled to June 19, 2012.

On the date of the continued hearing, defense counsel informed the court that the anticipated grounds for a new trial motion had not materialized. However, counsel further indicated that defendant had recently provided him with a letter purportedly authored by his sister. The typewritten letter read:

> "To Whom It May Concern: [¶] I am Orlyn's sister, Zena Jetton. At the time of Orlyn's arrest our family was grieving from the loss of our mother Fairy Miles who was taken from us Dec 3rd 2010. Since our loss we began trying to support each other even more because we were all dealing with the same feelings. Orlyn never missed a day to visit and he often came with his fiancé. [¶] I was located in the kitchen part of the house when I noticed some loud noises in the car port area. As I opened the door I notice[d] it was a police man, searching the car port area. I asked him what he was doing, and then he asked me can he search the house. I stated no, I never gave him permission to search the car port nor did I give him permission to search anything. He stated he found a gun and some drugs. He asked if the gun and drugs belong to me, I replied 'No'. Then he asked if I know who they belong to, I replied 'No'. Then I noticed they had my older brother under arrest sitting on the curb. Notice the car port to my mother's house has a two[-]way entrance; people are known to stash things around my mother's house. [¶] Darnell Pearson and Larry Ross were both in front of the house as well and are known to deal drugs and stay in drama. Orlyn was doing very well and staying out of trouble."

A copy of the letter was provided to the trial court. The document was neither signed nor dated, and defendant's attorney admitted he had not been able to establish personal contact with Ms. Jetton. Nevertheless, counsel opined that the outcome of the case would have been different had the sister testified, and thus requested a second

8.

continuance to allow for preparation of a motion for new trial based on the contents of the letter.

The prosecution objected to the continuance, arguing a new trial would not be warranted even if the statements allegedly made by defendant's sister could be proven. The timeliness of the motion was also called into question since Ms. Jetton had been considered an unavailable witness for several months. Defense counsel was unable to produce her during its case-in-chief and the prosecution's own efforts to subpoena her for trial were unsuccessful.

The trial court denied the continuance. The basis for its decision was as follows: "Assuming that [the letter] was signed … under penalty of perjury and assuming that it was signed by Ms. Jetton, I have reviewed the letter, [and] I see nothing in there that would cause this Court to believe that there [are] grounds for a new trial. I also concur with the People in that there has been time [-] both the prosecution and the defense attempted to find her. There was no request for a continuance during the trial for that purpose. [¶] I'm not going to grant the motion for a continuance based on another request to investigate or to go on a fishing expedition as it relates to Ms. Jetton … because in her own declaration, if that's what it is, there's no grounds for a new trial …."

Defendant claims the trial court's ruling violated his constitutional rights.

Analysis

Section 1050 governs continuances in criminal cases. A continuance may only be granted for good cause, and trial courts have broad discretion to determine whether good cause exists. (§ 1050, subd. (e); *People v. Alexander* (2010) 49 Cal.4th 846, 934 (*Alexander*).) The denial of a motion for continuance is reviewed under the abuse of discretion standard. (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.)

"To effectuate the constitutional rights to counsel and to due process of law, an accused must … have a reasonable opportunity to prepare a defense and respond to the charges." (*People v. Bishop* (1996) 44 Cal.App.4th 220, 231.) The trial court's exercise

9.

of discretion in matters of scheduling does not violate these rights absent an "'unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay."''" (*Alexander*, *supra*, 49 Cal.4th at p. 934, quoting *Morris v. Slappy* (1983) 461 U.S. 1, 11-12.) A party challenging the denial of a continuance bears the difficult burden of showing the court's discretion was abused in such a manner. (*People v. Beames* (2007) 40 Cal.4th 907, 920 (*Beames*).) These standards apply to motions to continue sentencing hearings and requests for time to prepare new trial motions. (See, e.g., *People v. Snow* (2003) 30 Cal.4th 43, 76-77.)

Here, the trial court appropriately evaluated the usefulness of a continuance in light of the arguments presented by defense counsel. (See *People v. Beeler* (1995) 9 Cal.4th 953, 1003 (*Beeler*).) "[T]o demonstrate the usefulness of a continuance a party must show both the materiality of the evidence necessitating the continuance and that such evidence could be obtained within a reasonable time." (*Ibid.*) Evidence supporting a motion for new trial must be "such as to render a different result probable on a retrial of the cause." (*People v. Delgado* (1993) 5 Cal.4th 312, 328.)

Ms. Jetton's alleged refusal to consent to a search of the carport would not have resulted in the exclusion of any evidence seized by police. Fourth Amendment rights are personal rights which cannot be vicariously asserted. (*People v. Schmitz* (2012) 55 Cal.4th 909, 932.) "[T]o claim Fourth Amendment protection, defendant must demonstrate that he *personally* has an expectation of privacy in the property searched." (*Ibid.*, original italics.) The requisite showing was not made or suggested by the contents of the letter.[3] Defendant impliedly acknowledges this fact, as there are no Fourth Amendment arguments in his briefs.

---

**3** We note defendant's trial counsel filed a motion to suppress evidence under section 1538.5 in June 2011. The motion was denied pursuant to the trial court's finding that there was "no evidence [of] the defendant's reasonable expectation of privacy with respect to that carport."

The stated purpose of the continuance was to allow for preparation of a motion for new trial based upon evidence that would impeach the testimony of Officer Williams. However, it has long been held that "newly discovered evidence which would merely impeach or discredit a witness does not compel the granting of a new trial [citation], and a new trial will not ordinarily be granted for newly discovered evidence of that character." (*People v. Moten* (1962) 207 Cal.App.2d 692, 698; see also, *People v. Green* (1982) 130 Cal.App.3d 1, 11 ["As a general rule, 'evidence which merely impeaches a witness is not significant enough to make a different result probable ....'"].) The circumstances of this case did not warrant a departure from the general rule. The anticipated testimony of Ms. Jetton was not exculpatory, provided no explanation for her brother's furtive behavior, and did not change the fact that illegal items were found at the scene.

Undue delay was another relevant consideration. The jury's verdict had been returned nine weeks earlier and defendant was incapable of providing any assurances that Ms. Jetton's testimony could be "obtained within a reasonable time." (*Beeler*, *supra*, 9 Cal.4th at p. 1003.) The refusal to allow further postponement of the proceedings in the face of Ms. Jetton's prolonged unavailability was not an arbitrary decision.

In summary, the discretion to deny a continuance "is abused only when the court exceeds the bounds of reason, all circumstances being considered." (*Beames*, *supra*, 40 Cal.4th at p. 920.) Defendant has not shown that such an abuse occurred.

**Payment of Probation Costs**

After sentencing defendant to prison, the trial court ordered him to pay a $296 probation report fee pursuant to section 1203.1b within 30 days of his release on parole. Defendant claims the trial court exceeded its authority by issuing the order without first determining his ability to satisfy the financial obligation. (See § 1203.1b, subd. (b) ["The court shall order the defendant to pay the reasonable costs if it determines that the defendant has the ability to pay those costs ...."].) Although he acknowledges his failure

11.

to object to the fee at the time of sentencing, defendant cites *People v. Pacheco* (2010) 187 Cal.App.4th 1392 (*Pacheco*) in support of the notion that this particular issue may be raised for the first time on appeal.

In *People v. Valtakis* (2003) 105 Cal.App.4th 1066, the First District held that a defendant's failure to object at sentencing to noncompliance with the probation fee procedures of section 1203.1b forfeits any claim of error on appeal. (*People v. Valtakis, supra,* at p. 1068.) The Sixth District reached a different conclusion in *Pacheco, supra,* 187 Cal.App.4th 1392, holding that challenges to fees erroneously imposed under Government Code sections 29550 and 29550.2, as well as Penal Code sections 987.8 and 1203.1b, "do not require assertion in the court below to be preserved on appeal." (*Pacheco, supra,* at p. 1397.) This aspect of the *Pacheco* opinion was expressly overruled by the California Supreme Court in *People v. McCullough* (2013) 56 Cal.4th 589, 599 (*McCullough*), which was decided during the pendency of defendant's appeal.

Although *McCullough* involved the imposition of a jail booking fee under Government Code section 29550.2, its holding is equally applicable to presentence probation report fees imposed pursuant to Penal Code section 1203.1b. Defendant received a copy of the probation report which recommended the $296 fee prior to the final sentencing hearing. His subsequent failure to challenge the court's imposition of the fee forfeited his ability to raise the issue on appeal. (*McCullough*, *supra*, 56 Cal.4th at p. 597.)

## **DISPOSITION**

The judgment is affirmed.

_____
DETJEN, J.

WE CONCUR:

_____
CORNELL, Acting P.J.

_____
FRANSON, J.

13.