Filed 4/15/26  P. v. Ochoa CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085612 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE419089) |
| ABEL ALFREDO RIVERA OCHOA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Daniel G. Lamborn, Judge.  Affirmed.

Courtney D. Reed, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Christopher P. Beesley and Evan Stele, Deputy Attorneys General, for Plaintiff and Respondent.

Abel Alfredo Rivera Ochoa appeals the trial court's victim restitution order alleging the court lacked a factual basis for the restitution amount ordered and failed to account for an insurance payment paid to the victim.

Finding sufficient evidence to support the court's order and no windfall to the victim, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

M.A. sells baked goods to his customers using a 2005 GMC Savana 3500 cargo van. On or about February 21, 2023, Rivera Ochoa crashed into M.A.'s cargo van, totaling the van and destroying the baked goods inside. Rivera Ochoa pleaded guilty to vandalism (Pen. Code,[1] § 594, subds. (a) & (b)(1)) and reckless driving (Veh. Code, § 23103, subd. (a)).

M.A. submitted a restitution request, claiming his estimated losses were $15,000 for his van, $8,000 for the baked goods, $985 for towing, $1,600 for a U-Haul rental, and $3,000 for lost wages. M.A. provided his purchase receipt for the baked goods, which totaled $7,779.76, and multiple towing and U-Haul receipts to confirm those losses. Additionally, M.A. provided a Kelley Blue Book estimated value for a 2007 GMC Savana 3500 Cargo Extended Van 3D with 100,000 miles. The Kelley Blue Book estimate was $8,995 to $11,832.

Approximately two years after the collision, the court held a restitution hearing. At the hearing, M.A.'s restitution request was admitted as evidence. M.A. testified the estimates available online were not correct because they did not account for a cargo box on his van that made it like "a big truck with a box."

M.A. purchased his van one year before the collision for $15,000. He estimated the van's mileage was around 150,000 miles at the time of the collision, and, while no evidence was elicited to determine how many miles had been added since he purchased the van, M.A. did not believe the vehicle

---

[1] Further undesignated statutory references are to the Penal Code.

had depreciated in value in the time he owned it. The prosecutor asked M.A. whether his van had certain features, and M.A. agreed that it had some features but not others. The prosecutor asserted the van's features increased its Kelley Blue Book estimated value to between $9,791 to $12,486. But Rivera Ochoa's counsel also asked M.A. to confirm if his vehicle had various "made-up, fake car parts," such as a "gradual velocity shaft," to which he replied, "Yes."

M.A. also testified to his other losses. M.A. purchased the baked goods for $7,779.76 before they all were destroyed in the collision. He did not get paid any income when he could not make his deliveries on the day of the collision, and due to an injury he suffered in the collision, he could not work for two weeks. He typically made $1,500 per week making his deliveries. Additionally, he incurred $985 in towing costs, which Rivera Ochoa agreed with by stipulation. Lastly, M.A. rented a U-Haul for $1,600 so the owner of his company could make deliveries to M.A.'s customers while he could not work. M.A. was not paid for the deliveries in his absence but rented the U-Haul nonetheless because he could not afford to lose his customers' patronage. When he returned to work, M.A. purchased a replacement vehicle to use for his deliveries.

Rivera Ochoa's insurance paid M.A. $3,000 for his van and $7,800 for the destroyed baked goods, for a total of $10,800. At the restitution hearing, the prosecutor asserted that after applying the $10,800 insurance payment to M.A.'s baked goods, towing, and U-Haul losses, $435 remained that should be applied to reduce the restitution order.

The court ordered Rivera Ochoa to pay $9,791 for M.A.'s van, choosing a lower estimate for the van's value to account for M.A.'s agreement that his car had certain car parts that were made up by defense counsel. It also

3

ordered Rivera Ochoa to pay M.A. $3,000 for lost wages. And agreeing with the prosecutor, the court reduced the restitution owed for the van by $435, after offsetting the costs for the baked goods, U-Haul, and towing expenses with the insurance payment, ordering a total restitution award of $12,356.

## DISCUSSION

A.   *Legal Standards*

"Restitution is constitutionally and statutorily mandated in California." (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045 (*Keichler*); see Cal. Const., art. I, § 28, subd. (b)(13); § 1202.4, subd. (f).) "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) The court's order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." (*Id.*, subd. (f)(3).)

When seeking restitution, a victim must "provide an adequate factual basis for the claim." (*People v. Giordano* (2007) 42 Cal.4th 644, 664 (*Giordano*).) Once the victim puts forth prima facie evidence of loss, "the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim." (*People v. Prosser* (2007) 157 Cal.App.4th 682, 691 (*Prosser*).)

"A trial court's determination of the amount of restitution is reversible only if the appellant demonstrates a clear abuse of discretion. [Citation.] No abuse of discretion is shown simply because the order does not reflect the exact amount of the loss, nor must the order reflect the amount of damages

4

recoverable in a civil action.  [Citation.]  In determining the amount of restitution, all that is required is that the trial court 'use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.  [Citations.]  The order must be affirmed if there is a factual and rational basis for the amount.' " (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1382.)

" 'In reviewing the sufficiency of the evidence [to support a factual finding], " '[t]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." ' " (*Keichler, supra*, 129 Cal.App.4th at p. 1045.)  " 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding.  [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact." (*People v. Sy* (2014) 223 Cal.App.4th 44, 63.)

B.     *Analysis*

1.  Valuation of Losses

Rivera Ochoa asserts the court's order lacked a factual basis in the valuations of M.A.'s losses.  We disagree.

First, we cannot say the trial court's order was lacking in factual basis when it valued M.A.'s van at $9,791.  M.A. testified he purchased the van for $15,000 one year before the collision and did not believe it had lost value over the year he owned it.  And the court could rely on M.A.'s testimony regarding the value of the van.  (See *Prosser, supra*, 157 Cal.App.4th at p. 692 [explaining a court may base the value of the victim's property on the uncorroborated statement of the victim]; *In re Brian S.* (1982) 130 Cal.App.3d

5

523, 532 (*Brian S.*) [affirming the court's acceptance of a "victim's opinion as to value over that opined by [the defendant's] witness"].)

Nor can we say the court's order was irrational. Courts often must estimate a victim's loss using the evidence before them. For example, in *People v. Ortiz* (1997) 53 Cal.App.4th 791, 799–800, it was not an abuse of discretion for the trial court to estimate the number of counterfeit music cassette tapes the defendant had sold to determine the restitution owed to the victim. Similarly, in *Prosser, supra*, 157 Cal.App.4th at page 690, it was not an abuse of discretion for the court to estimate the value of miscellaneous jewelry and other items by discounting the amounts claimed by the victim. Here, M.A. testified to his purchase price and offered evidence that a similar van with fewer miles retained a value between $8,995 to $11,832 while not accounting for the box feature M.A.'s van had. It is possible that had M.A.'s box been properly accounted for, the van's value may have been even higher. Further, Rivera Ochoa failed to offer any evidence that the van was worth less. (See *Giordano, supra*, 42 Cal.4th at p. 666 [explaining that while a trial court's "calculation was imprecise" and "not carefully designed to establish [the victim's loss]," the defendant had not shown the amount of restitution was an abuse of discretion because it should have been less].)

Furthermore, the court was free to conclude the $3,000 insurance payment for the van was not the best indication of its value because there are many reasons why a victim may accept an amount "substantially less than his or her losses," including the need for prompt payment and certainty. (See *People v. Bernal* (2002) 101 Cal.App.4th 155, 163 (*Bernal*).) And Rivera Ochoa's argument that the court's order "rests on the premise that a 2005 van, nearly 20 years old by the time of the 2025 hearing, retained an unrealistic portion of its value" is not well-taken. There was no evidence of

6

the vehicle's value when sold new, and M.A. specifically testified he purchased the van for $15,000 one year before the collision, not in 2005 or any other time close to it. Thus, given the evidence and without even considering whether the van had any of the additional features M.A. testified about, we cannot say that in arriving at the discounted valuation of $9,791 the court clearly abused its discretion.

Second, the trial court also did not abuse its discretion in valuing M.A.'s lost wages at $3,000. M.A. testified he could not work for two weeks because of the collision Rivera Ochoa caused, and he would typically make $1,500 per week, totaling $3,000 in lost wages. Further, M.A. explained he rented a U-Haul truck and eventually replaced his van to avoid losing his customers. Thus, contrary to Rivera Ochoa's assertion that there was no evidence M.A. would have made deliveries and therefore income during the two-week period he could not work, the court had an adequate factual basis for finding that M.A. lost $3,000 in wages. Further, Rivera Ochoa did not provide any evidence otherwise. (See *Prosser, supra*, 157 Cal.App.4th at p. 692; *Brian S., supra*, 130 Cal.App.3d at p. 532.)

Third, while the court did not specifically order restitution for the baked goods ($7,779.76), U-Haul ($1,600), and towing ($985) costs, it is clear it found these losses when it accounted for them in its order, offsetting the restitution amount owed by subtracting their total, approximately $10,365, from the $10,800 insurance payment, finding approximately $435 remained to be offset from the restitution order. We see no abuse of discretion in the court's determination of these amounts, as M.A. provided receipts for each and Rivera Ochoa stipulated to the towing cost. Thus, the court did not abuse its discretion when it determined M.A.'s losses.

2. Offset for Previous Insurance Payment

Rivera Ochoa avers the court's restitution order overcompensates M.A. for his losses because it compensated M.A. for baked goods "he did not own," and failed to offset the order by the amount paid by Rivera Ochoa's insurance company. We disagree.

M.A. testified without contradiction that *he* paid for the baked goods. Thus, we have no reason to find the court abused its discretion when it offset the restitution order accordingly. (See *Prosser, supra*, 157 Cal.App.4th at p. 692; *Brian S., supra*, 130 Cal.App.3d at p. 532.)

Furthermore, while M.A. received $10,800 from Rivera Ochoa's insurance company, we find no overcompensation, or windfall. To avoid a windfall, the court's restitution order must offset the restitution amount owed to the extent the victim has been paid by the defendant's insurer for the same items of loss. (*People v. Short* (2008) 160 Cal.App.4th 899, 903; *People v. Bernal, supra*, 101 Cal.App.4th at p. 168.)

The court found Rivera Ochoa responsible for $7,779.76 for the destroyed baked goods, $1,600 for the U-Haul, $985 for towing, $3,000 for lost wages, and $9,791 for the van. In total, the court determined Rivera Ochoa was responsible for $23,155.76 in losses. The court then subtracted the full $10,800 insurance payment from these losses, resulting in the award of $12,356 in restitution. Considering the court's reasonable valuations of losses and the court's offset of those losses with the full insurance payment, it cannot be said that M.A. received a windfall.

## DISPOSITION

The restitution order is affirmed.

KELETY, J.

WE CONCUR:

DATO, Acting P. J.

RUBIN, J.