Filed 6/20/14  P. v. Gallagher CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063802 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS258052) |
| JESSICA RENEE GALLAGHER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Edward P. Allard, III, Judge.  Affirmed.

Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Julie L. Garland, Assistant Attorneys General, Andrew S. Mestman, Sean M. Rodriquez, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Jessica Renee Gallagher of first degree burglary (Pen. Code,[1] § 459; count 1); assault with a semiautomatic firearm (§ 245, subd. (b); count 2); carrying a concealed weapon (§ 25400, subd. (a)(3); count 3); unlawfully taking and driving a vehicle (Veh. Code, § 10851, subd. (a); count 5); and battery (§ 242; count 6). As to count 1, the jury found true enhancement allegations that the burglary was of an inhabited dwelling (§ 460); someone other than an accomplice was present during the commission of the burglary (§ 667.5, subd. (c)(21)); and Gallagher was personally armed with a firearm (§ 12022, subd. (a)(1)); as to count 2, it found true Gallagher personally used a firearm (§§ 1192.7, subd. (c)(8), 12022.5, subd. (a)); and as to count 3, it found true Gallagher was not the firearm's registered owner. (§ 25850, subd. (c)(6)).

The court denied Gallagher's new trial motion brought on grounds the prosecutor had failed to turn over certain evidence to the defense as required under *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*). It sentenced Gallagher to seven years in prison.

Gallagher contends: (1) there was not sufficient evidence to support her burglary conviction and (2) the court prejudicially erred by denying her new trial motion. We affirm the judgment.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Case*

In June 2012, Frank Reeves loaned Gallagher his car. She never returned it, despite Frank's almost daily requests for it. Eventually, Frank sent her a text message stating, "You know what? Keep my fucking car. I don't care anymore. Keep my car. I'm calling it in already." Frank reported to police that the vehicle was stolen. For approximately two weeks in the summer of 2012, Gallagher stayed at an apartment that Frank shared with his sister, Lonylyn Reeves.[2]

On Saturday, July 7, 2012, Frank sent Gallagher a text message that he and Lonylyn were giving up the apartment and Gallagher should come pick up her belongings from there by the upcoming Monday otherwise he would leave them outside the door. Gallagher responded by text message: "You move my shit outside, and I'm going to hurt someone. You already stole the car back. So keep playing."

On July 8, 2012, Gallagher, Lovie, and Trina Rand went to the apartment and Lonylyn let them in. Gallagher said she was looking for her belongings. Lonylyn told Gallagher her belongings were not at the apartment. Lovie followed Gallagher inside the apartment and soon afterwards Gallagher, Lovie and Rand left the apartment. Minutes later, Gallagher re-entered the apartment and asked Lonylyn if a computer that was inside a bag in the apartment belonged to Frank. When Lonylyn said yes, Gallagher took the bag with the computer. Lonylyn ran after Gallagher and reached for the bag, but

---

[2]    We refer to Frank and Lonylyn Reeves by their first names to avoid confusion; for the same reason, we also refer to Gallagher's daughter, Lovie, by her first name.

Gallagher told her, "No, no, no, Lonnie." Gallagher dropped the bag, pointed a gun in Lonylyn's face and slid the gun's slide backward. Lonylyn fell to the ground, picked up the bag and returned the bag and computer to the apartment.

After Lonylyn telephoned Frank to tell him Gallagher had appeared at the apartment, Frank went there. Upon his arrival, Gallagher approached him outside, demanding, "Where's my stuff, bitch?" Rand yelled that Gallagher had a gun. Frank called 911 as Lovie, Rand and another of Gallagher's companions, Sylvianita Widman, jumped on Frank and attacked him. Frank told the operator, "There's a female who's over here with a gun." According to Frank, Gallagher pulled out a gun, pulled its slide backwards, released the slide, and pointed the gun at him. The four women, knowing police had been contacted, went to their vehicle. Frank held on to the vehicle's passenger door in an attempt to detain Gallagher until police arrived.

Lonylyn exited the apartment, saw Gallagher and another woman hitting Frank in the face, called 911 and reported that Frank was holding on to the front passenger door of a moving vehicle, and Gallagher was sitting in the front passenger seat.

During the ride away from the apartment, Gallagher struck Frank in the back of the head with the gun. At one point the vehicle stopped, and Gallagher took over the driving. Later, Rand left the vehicle and walked away with the gun in her purse.

Chula Vista Police Department Officer Jessica Severance responded to a call regarding the incident and met three women, a child, and Reeves near a stopped vehicle. The women denied having a gun. Frank told Officer Severance that Rand had walked away carrying a knife. Chula Vista Police Department Officer Alberto Estacio testified

4

that he helped Officer Severance detain Rand, who was walking away from the vehicle. She had a gun and loaded magazine in her purse. The parties stipulated that Gallagher was not listed with the Department of Justice as being the registered owner of the firearm.

*Defense Case*

Gallagher testified she had not returned Frank's car to him because in June 2012, a man with a gun had forcibly taken the car from her. Regarding the July 8, 2012 incident, Gallagher testified that Frank had asked her for his vehicle. She in turn asked for her belongings. Frank pushed her and began a physical altercation between himself on one side, and Gallagher and Lovie on the other. Gallagher admitted she had entered Frank's apartment and taken the computer, but denied having the intention to steal it: "I was going to act like I was going to take [the computer] so he would give me my stuff back. I was thinking he had [my belongings] inside his car." Gallagher testified she had not planned on keeping the computer but had taken it and asked Lonylyn whose it was; Lonylyn claimed it was hers and grabbed it from Gallagher, who let go of it.

Gallagher testified she returned to the vehicle with the other women and the driver started driving away. Frank forced himself onto their car and refused to let go. Gallagher hit Frank on the knuckles in order to get him to let go of the car, but he refused. She also grabbed his keys from his hands and threw them out of the vehicle's window. Gallagher admitted that at one point she drove the car. Gallagher denied taking a gun to Frank's apartment that day, and testified she was unaware whether any of her companions had done so. However, Gallagher acknowledged on cross-examination that after the incident, police had asked her, "What did you do that you shouldn't have done?" She had

5

responded to the officer: "Having a gun." Gallagher testified she had lied to police after they found a gun on Rand. Gallagher explained at trial, "I felt like if [Rand] was trying to protect me, then I didn't want her to be in trouble for it, because it was my fault, my responsibility."

Widman testified she did not see Gallagher point a gun at Frank or hit him with one. Lovie testified that at one point after they had left the apartment, Gallagher started to drive the vehicle. Lovie also testified she never saw Gallagher use a gun during the incident.

*New Trial Motion*

Gallagher moved for a new trial under section 1181, subdivision (5), alleging a violation under *Brady*, *supra*, 373 U.S. 83 (*Brady* violation), because the People had not provided the defense certain documents regarding the fact that Frank had been arrested on October 13, 2012. Gallagher pointed out that Frank had testified at her trial on November 30, 2012. On December 3, 2012, he had pleaded guilty to one count of possession of a controlled substance for sale, a crime of moral turpitude. (Health & Saf. Code, § 11378.) Frank was sentenced to three years of probation, and the court suspended imposition of a 120-day jail term. Gallagher was convicted on December 5, 2012, but the prosecution had not informed the defense about Frank's arrest or plea, and Gallagher did not learn that information until January 11, 2013; therefore, she did not get an opportunity to use that information to impeach Frank's testimony at her trial.

The trial court denied Gallagher's motion, explaining that to establish a *Brady* violation, Gallagher was required to prove: (1) the evidence regarding Frank's arrest was

6

favorable to her; (2) the People had suppressed that evidence; and (3) resulting prejudice. The court ruled that although the first two prongs were met, there was no prejudice to Gallagher. The court took into account various factors. First, it noted that Gallagher herself had admitted doing many of the acts that supported the convictions: "If you go back and look at the testimony in this case . . . [Gallagher] pretty much admitted to the burglary. And I don't even think that that's an issue. [¶] The evidence, I think, even from [Gallagher] herself . . . she admits to the burglary. [She has] admitted to hitting Frank Reeves. And probably the most important thing is [she] told the police, post-arrest, that she had a gun."

Second, the court pointed to corroborating evidence supporting the convictions for gun possession and assault, stating, the 911 calls were "clearly spontaneous. They are—they're excited. There's no opportunity to reflect and make up a story. [¶] And when they talk about what is going on it includes the fact that there is reference being made to a gun. Now, . . . guess what? And a gun got found." Third, the court noted, "You also have Frank Reeves' injuries. . . . in and of themselves, [they corroborate] his testimony about being hit . . . with a gun. You have Lonylyn's testimony." Fourth, the court noted that on the day that Frank had testified in Gallagher's trial, he had not yet pleaded guilty to the arrest charges; accordingly, under Evidence Code section 352, the court stated it possibly would have excluded evidence of his arrest because that issue would necessitate a "mini trial."

Finally, the court summarized and addressed the defense's potential claims of prejudice: "One would be that at the time that [Frank] gave testimony in this case at trial

7

he knew that he had charges pending against him and that the District Attorney's office, the same prosecutorial entity that was prosecuting this case, was also the prosecutor that was prosecuting him. [¶] And so there is that issue as to whether or not, as a result, [Frank] has this intent to curry favor with the People, in other words, tell them what they want to hear in the hopes of benefiting from that in his own case. [¶] Now the problem with that theory is this, . . . the People would have . . . gone back to his grand jury testimony. [¶] Because remember, he testified in the grand jury and his testimony . . . was consistent with his trial testimony. And at the time . . . there was no intent to curry favor with the People."

In light of the above analysis, the court concluded Gallagher had not established a *Brady* violation, pointing out that evidence of Frank's arrest and guilty plea would only have been "material if [there were] a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. [¶] And as I say, in this case, understanding what the facts are, understanding the evidence in this case, I just don't see where the defense has met that burden."

DISCUSSION

I.

Gallagher contends there was not sufficient evidence to support the burglary conviction because she lacked the intent to permanently deprive Frank of the computer. She admits taking the computer from the apartment, but claims she had intended to return it, and in fact she did so almost immediately.

8

A. *Standard of Review*

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.] Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054, overruled on other grounds in *People v. Rundle* (2008) 43 Cal.4th 76, 151; see also *People v. Ceja* (1993) 4 Cal.4th 1134, 1139.)

In making our determination, we do not reweigh the evidence; the credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.) We will not reverse unless it clearly appears that on no hypothesis whatever is there sufficient

substantial evidence to support the jury's verdict. (*People v. Redmond* (1969) 71 Cal.2d 745, 755; see also *People v. Stewart*, at p. 790; *People v. Olea* (1971) 15 Cal.App.3d 508, 513.)

B. *Law Regarding Burglary*

Burglary is committed when a "person . . . enters any house, room, apartment . . . or other building . . . with intent to commit grand or petit larceny or any felony." (§ 459; *People v. Montoya* (1994) 7 Cal.4th 1027, 1041; see *People v. Lawrence* (2000) 24 Cal.4th 219, 232-233.) It is settled that the essence of the offense is entry with the proscribed intent; such entry constitutes the completed crime of burglary regardless of whether any felony or theft actually is committed. (*People v. Allen* (1999) 21 Cal.4th 846, 863, fn. 18; see also *Montoya*, at pp. 1041-1042.)

"[I]n reviewing the sufficiency of evidence to support a burglary finding, the requisite intent is rarely demonstrated by direct proof, and as a result, may be inferred from facts and circumstances. [Citation.] As a result, evidence such as theft of property from a dwelling may create a reasonable inference that there was intent to commit theft at the time of entry." (*In re Leanna W.* (2004) 120 Cal.App.4th 735, 741; see *People v. Lewis* (2001) 25 Cal.4th 610, 643.)

It is settled that a conviction cannot be based on mere speculation and conjecture. (*People v. Marshall* (1997) 15 Cal.4th 1, 35 ["mere speculation cannot support a conviction"]; *People v. Harvey* (1984) 163 Cal.App.3d 90, 105, fn. 7 ["Substantial evidence means more than simply one of several plausible explanations for an ambiguous event."].) However, on the totality of the evidence here, a reasonable trier of fact could

10

draw nonspeculative inferences that Gallagher had the requisite felonious intent when she entered the apartment. She had gone to the apartment in search of her belongings, having threatened Frank that if her belongings went missing, she would hurt someone. Upon being told her belongings weren't there, she searched the apartment and left. She returned to the apartment and specifically asked Lonylyn who owned the computer. When Lonylyn told her it was Frank's she took it outside the apartment. Gallagher refused to return the computer to Lonylyn, and even pointed a gun at Lonylyn's head to prevent her taking back the computer. These facts tend to show Gallagher intended to permanently take the computer. It was only when Lonylyn insisted on grabbing the computer that Gallagher relented and let go of it. From these circumstances, the jury reasonably could infer from Gallagher's preentry actions, and ultimate removal of the computer from the apartment, that Gallagher had committed burglary.

Although Gallagher argues she took the computer briefly and merely intended to use it as a bargaining chip to get her belongings back from Frank, we still conclude the evidence supports Gallagher's burglary conviction. We rely on guidance from the California Supreme Court in *People Davis* (1998) 19 Cal.4th 301 (*Davis*), which dealt with the following circumstances: "[T]he defendant enters a store and picks up an item of merchandise displayed for sale, intending to claim that he owns it and to 'return' it for cash or credit; he carries the item to a sales counter and asks the clerk for a 'refund'; without the defendant's knowledge his conduct has been observed by a store security agent, who instructs the clerk to give him credit for the item; the clerk gives the

11

defendant a credit voucher, and the agent detains him as he leaves the counter with the voucher; he is charged with theft of the item."  (*Davis*, at p. 303.)

In light of those facts, the *Davis* court reviewed its jurisprudence on burglary:  "As noted earlier, the general rule is that the intent to steal required for conviction of larceny is an intent to deprive the owner *permanently* of possession of the property.  [Citations.] . . .  But the general rule is not inflexible:  'The word "permanently," as used here is not to be taken literally.'  [Citation.]  Our research discloses three relevant categories of cases holding that the requisite intent to steal may be found even though the defendant's primary purpose in taking the property is not to deprive the owner permanently of possession: i.e., (1) when the defendant intends to 'sell' the property back to its owner, (2) when the defendant intends to claim a reward for 'finding' the property, and (3) when, as here, the defendant intends to return the property to its owner for a 'refund.' "  (*Davis*, s*upra*, 19 Cal.4th at p. 307.)

Under *Davis's* logic, Gallagher's taking of the computer from the apartment evinced an intent to permanently deprive Frank of the computer because Gallagher did not seek or obtain anyone's consent to take the computer, and, assuming she would only return the computer to Frank after he handed over her belongings, it follows that if Frank failed to do so—and in this case Frank had an incentive to withhold her belongings until she returned his car—then under Gallagher's stated goal, she was prepared to permanently deprive Frank of the computer.  (Accord, *Davis*, *supra*, 19 Cal.4th at pp. 317-318.)

12

II.

Gallagher contends the court erroneously denied her new trial motion, and she suffered prejudice from being unable to impeach Frank, who had "presented virtually the only evidence that [Gallagher] committed the crimes" alleged in counts 2, 3, and 5.

The Due Process Clause of the federal Constitution requires that the prosecution disclose to the defendant information that is both material and exculpatory. (*Brady*, *supra*, 373 U.S. at p. 87.) "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." (*Strickler v. Greene* (1999) 527 U.S. 263, 281–282.) The *Brady* rule "encompasses evidence 'known only to police investigators and not to the prosecutor.' [Citation.] In order to comply with *Brady*, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.' " (*Strickler v. Greene*, at pp. 280-281.)

The People have a duty to disclose any favorable and material evidence even without a request by the accused. (*Brady*, *supra*, 373 U.S. at p. 87; *In re Sassounian* (1995) 9 Cal.4th 535, 543.) Evidence is " 'favorable' " under *Brady* "if it either helps the defendant or hurts the prosecution, as by impeaching one of its witnesses." (*In re Sassounian*, *supra*, at p. 544.) Evidence is material where there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability

13

sufficient to undermine confidence in the outcome." (*United States v. Bagley* (1985) 473 U.S. 667, 682.)

On appeal, the defendant has the burden to establish the elements of a *Brady* violation. (*Strickler v. Greene*, *supra*, 527 U.S. at pp. 289, 291.) A court reviewing a suspected *Brady* violation independently reviews the question of whether a *Brady* violation has occurred but gives "great weight to any trial court findings of fact that are supported by substantial evidence." (*People v. Letner* (2010) 50 Cal.4th 99, 176.)

" ' "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' [Citations.] ' "[I]n determining whether there has been a proper exercise of discretion on such motion, each case must be judged from its own factual background." ' " (*People v. Delgado* (1993) 5 Cal.4th 312, 328.) It has long been held that "newly discovered evidence which would merely impeach or discredit a witness does not compel the granting of a new trial [citation], and a new trial will not ordinarily be granted for newly discovered evidence of that character." (*People v. Moten* (1962) 207 Cal.App.2d 692, 698; see also, *People v. Green* (1982) 130 Cal.App.3d 1, 11 ["As a general rule, 'evidence which merely impeaches a witness is not significant enough to make a different result probable . . . .' "].) The circumstances of this case do not warrant a departure from this general rule.

Here, we give great weight to the trial court's conclusion that the People had presented sufficient evidence of Gallagher's guilt on counts 2, 3, and 5. Gallagher claims she would have impeached Frank's testimony as to those counts because he was the sole

14

prosecution witness regarding the facts supporting those convictions. However, CALCRIM No. 301 states that "the testimony of only one witness can prove any fact." Further, we have reviewed the transcript of Frank's July 24, 2012 preliminary hearing testimony, and conclude Gallagher's attempt to impeach Frank's testimony with information regarding his October 2012 arrest would have been unavailing because Frank gave consistent testimony regarding the significant points in dispute both in the weeks immediately following the incident, when he had not yet been arrested and had no motive to appease the prosecutor, and at trial.

Regarding Gallagher's conviction for carrying a concealed weapon, Frank's testimony was independently corroborated by Lonylyn, who testified Gallagher pointed the gun at her. Lonylyn mentioned Gallagher's use of the gun in her 911 call, as did Frank in his 911 call. Those recorded contemporaneous statements regarding the gun were made spontaneously, and the jury plainly gave them a high degree of credibility. The jury was entitled to discount Gallagher's credibility at trial because although she had admitted to police she had carried a gun during the incident, she testified that she had lied to police about that.

Gallagher did not admit to using the gun to hit Frank. However, considering she had pointed a gun at Lonylyn and Frank earlier, and admitted hitting his knuckles and throwing away his keys during the ride away from the apartment, the jury reasonably could believe Frank's account she hit him with the gun when he impeded her escape. That she did not admit to so doing at trial follows from her denying having the gun at all.

15

Gallagher's conviction for driving the vehicle was supported by testimony from both Gallagher herself and Lovie. In light of the totality of the circumstances, we conclude Gallagher's contention of a *Brady* violation fails because she did not meet her burden of demonstrating the reasonable probability of a different outcome had she been given an opportunity to impeach Frank's testimony with information regarding his arrest and guilty plea.

## DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

NARES, Acting P. J.

McDONALD, J.